United States District Court
Southern District of Texas
**ENTERED**
October 01, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| DONNA LEE FISHER, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:26-cv-00072 |
| | § | |
| CITY OF FREEPORT, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is a motion to dismiss filed by Defendant City of Freeport, Texas (the "City"). *See* Dkt. 30. Having reviewed the briefing, the record, and the applicable law, I recommend that the motion be granted.

## BACKGROUND[1]

This dispute arises from an adverse employment action. Plaintiff Donna Lee Fisher worked for the City for approximately nine years, including four years as the City's Human Resources Director. On January 15, 2026, City Manager Danielle Kelly placed Fisher on paid administrative leave pending a review of payroll and benefits administration within the HR department. In February 2026, the City terminated Fisher's employment based on its internal audit findings.

On February 4, 2026, *The Facts*, a local newspaper, published an article concerning Fisher's termination. Kelly told *The Facts* that the internal audit found "known process deficiencies that were raised internally and were expected to be corrected," but that "corrective actions were not implemented." Dkt. 29-5 at 1. Kelly further identified allegedly "inaccurate leave balances on paystubs, off-system spreadsheets, payroll deduction and insurance billing mismatches, and delayed or incomplete onboarding." *Id.* "Deficiencies in payroll system maintenance and accounting controls were also cited as affecting oversight and

[1] These facts are taken from Fisher's First Amended Complaint. *See* Dkt. 29.

auditability." *Id.* Fisher contends that Kelly's statements were false insofar as they attributed the identified problems and the failure to correct them to Fisher personally. On February 16, 2026, Fisher requested a name-clearing hearing through her attorney but was denied one.

Fisher asserts a single claim against the City under 42 U.S.C. § 1983: deprivation of a liberty interest without due process. The City has moved to dismiss, arguing that Fisher cannot state a claim because the charges against her were not stigmatizing and, even if they were stigmatizing, the charges were true. I need to address only the first issue.

**RULE 12(b)(6) MOTION TO DISMISS**

A defendant may move to dismiss a complaint when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Conversely, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (cleaned up). When evaluating a Rule 12(b)(6) motion, I accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 675 (5th Cir. 2020) (quotation omitted).

## ANALYSIS

Fisher asserts a Fourteenth Amendment claim for deprivation of a liberty interest against the City. This type of claim is frequently referred to as a "stigma-plus" claim. "The stigma-plus doctrine recognizes the liberty interest that an individual has in his good name and reputation." *Babinski v. Sosnowsky*, 79 F.4th 515, 519 n.3 (5th Cir. 2023). To state a stigma-plus claim, Fisher must allege that:

> (1) [s]he was discharged; (2) stigmatizing charges were made against [her] in connection with the discharge; (3) the charges were false; (4) [s]he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) [s]he requested a hearing to clear [her] name; and (7) the [City] denied the request.

*Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 419 (5th Cir. 2018). It is undisputed that Fisher was discharged. In assessing the viability of Fisher's claim, I will assume, without deciding, that every charge leveled against Fisher is false and that Fisher can satisfy the third through seventh elements. It does not matter, however, because Fisher's claim fails at the second element—the charges at issue are not stigmatizing under Fifth Circuit precedent.

The Fifth Circuit has summarized its stigma-plus jurisprudence as follows:

> To establish a liberty interest, an employee must demonstrate that his governmental employer has brought false charges against him that might seriously damage his standing and associations in his community, or that impose a stigma or other disability that forecloses freedom to take advantage of other employment opportunities. Mere proof that nonrenewal might make an individual less attractive to other employers does not, by itself, implicate a liberty interest. Nor is reputation alone a constitutionally protected interest, even though state law may create an action for defamation. Rather, the stigma must be imposed by the state in connection with its denial of a right or status previously recognized by state law . . . .
>
> Moreover, for a charge to be stigmatizing it must be worse than merely adverse; it must be such as would give rise to a badge of infamy, public scorn, or the like.

*Campos v. Guillot*, 743 F.2d 1123, 1125 (5th Cir. 1984) (cleaned up). "Terminations have imposed a stigma depriving plaintiffs of a liberty interest where the allegations supporting a termination involved dishonesty or immorality, and

alcoholism, disloyalty, or subversive acts." *Cabrol v. Town of Youngsville*, 106 F.3d 101, 107–08 (5th Cir. 1997) (cleaned up). "Charges supporting termination that have not imposed a stigma sufficient to implicate a constitutionally protected liberty interest include participation in an illegal strike, and incompetence and outside activities." *Id.* (cleaned up).

Here, Kelly "announced that known deficiencies were expected to be corrected but corrective actions were not implemented." Dkt. 31 at 7 (quotation omitted). I agree with Fisher that there were concrete criticisms of her professional performance. But specificity and professional consequences do not, by themselves, transform allegations of deficient job performance into constitutionally stigmatizing charges. If specificity and professional consequences were enough, then every maligned public employee would have a claim for deprivation of a liberty interest any time the grounds for their termination were made public. The Fifth Circuit requires more than allegations that may make an employee less attractive to prospective employees; the charge must carry the sort of opprobrium association with a "badge of infamy, public scorn, or the like." *Campos*, 743 F.2d at 1125.

The closest case that I have been able to find in Fisher's favor is *Huntley v. Community School Board of Brooklyn, New York School District No. 14*, 543 F.2d 979 (2d Cir. 1976). In *Huntley*, a school board superintendent publicized the reasons for discharging a school principal, including that he:

> failed to demonstrate that quality of leadership necessary to effectively deal with the educational program; that he was responsible for the rapid deterioration of the school; that he had not provided for the basic safety of the children and staff; and that his leadership had created a climate of confusion and discontent.

*Id.* at 985 (quotation marks omitted). The Second Circuit held that "with a public statement of these charges, it is unlikely that Huntley would ever have a chance to obtain another supervisory position in the public schools or elsewhere." *Id.* These charges lack any allegations of dishonesty, immorality, or disloyalty.

The Fifth Circuit has cited *Huntley* as a comparison when explaining that reputational harm must be accompanied by injury to employment or employment opportunities. *See In re Selcraig*, 705 F.2d 789, 796 (5th Cir. 1983) (citing *Huntley*, 543 F.2d 979). *Selcraig*, however, did not hold that the charges in *Huntley* would satisfy the Fifth Circuit's stigma requirement. And even if it had, a closer examination of the facts in *Huntley* shows why the principal's alleged failures would have given rise to public scorn:

> During his three years as acting principal the school had 39 reported fires. The school had no reported fires the year before Huntley took over and only one the year after he was terminated. During his time as acting principal I.S. 33 also had an unusually high number of hallway incidents caused by students and by outsiders compared to the number of such incidents before and after Huntley's service. The number of parents who requested transfer of their children from I.S. 33 rose from 5 during Huntley's first year, to 28 during his second, to 132 during his final year. Thereafter the number of requested transfers dropped off significantly. During his service as acting principal a large number of teachers' grievances were filed against Huntley, most of which were upheld.

*Huntley*, 543 F.2d at 981. Huntley's alleged incompetence endangered the safety of children and teachers. There were 39 *fires* reported at the school! The well-being of children and teachers is not something anyone takes lightly, and it is easy to see why these charges were considered stigmatizing.

In contrast, the problems that Kelly attributed to Fisher included approximately $7,000 in overpaid premiums and $2,499.51 in overpaid compensatory time. *See* Dkt. 29-5 at 1. "Some city employees were affected by inaccurate leave balances and . . . incorrect payroll transactions," but "residents and vendors were not impacted." *Id.* at 2. These "strictly internal administrative matters" did not involve allegations that Fisher acted dishonestly, unlawfully, corruptly, or with some comparably opprobrious purpose. Rather, Kelly accused Fisher of deficient management and of failing to correct problems. Nor did the alleged failures create the kind of public-safety emergency present in *Huntley*. Thus, however damaging the charges may be to Fisher's future employment

prospects, they do not carry the type of stigma required by Fifth Circuit precedent. Tellingly, in her response briefing, Fisher attempts only to distinguish herself from cases cited by the City; but Fisher cites no case holding that comparable accusation of professional mismanagement and failure to correct administrative deficiencies are constitutionally stigmatizing. In the absence of any authority suggesting that such charges are constitutionally stigmatizing, Fisher fails to state a claim upon which relief may be granted.[2]

## CONCLUSION

For the reasons discussed above, I recommend that the City's motion to dismiss (Dkt. 30) be granted.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 1st day of October 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

[2] Because my recommendation rests entirely on the fact that, as a matter of law, the charges were not stigmatizing under Fifth Circuit precedent, I did not consider any of the documents that the City submitted with its motion to dismiss.